[Cite as *Williams v. Mid-Ohio Coal Co.*, 2026-Ohio-1245.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DORIS E. WILLIAMS, et al., | Case No. 25 CA 000032 |
| Plaintiffs - Appellants | Opinion & Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas of Guernsey County, Case No. 23 CV 363 |
| MID-OHIO COAL COMPANY, et al. | Judgment:  Reversed and Remanded |
| Defendants - Appellees | Date of Judgment: April 6, 2026 |

BEFORE: William B. Hoffman, Andrew J. King, and David M. Gormley, Judges

APPEARANCES: Daniel P. Corcoran (Theisen Brock), Marietta, Ohio, for Plaintiffs-Appellants Doris E. Williams and Robert W. Williams; J. Alex Quay, Joshua E. O'Farrell, and Erin L. Dickinson (Buckingham, Doolittle & Burroughs, LLC), Akron, Ohio, for Defendant-Appellee Mid-Ohio Coal Company.

*Gormley, J.*

{¶1}    Plaintiffs Doris and Robert Williams argue in this appeal that the trial court erred when it found that Mid-Ohio Coal Company is the rightful owner of the minerals beneath a 35-acre tract of land owned by the Williamses.  According to the Williamses, Mid-Ohio Coal is barred from asserting any interest in the subsurface rights because of a 1954 default-judgment decision that quieted title to the entire property — including the underground minerals — in favor of the Williamses' predecessors in title.  Mid-Ohio Coal counters by pointing out that it was not named as a party in that lawsuit despite having acquired its interest in the underground commodities more than a decade before the quiet-title judgment was issued.

{¶2}    Because Mid-Ohio Coal acquired its interest in the minerals in 1940 through a chain of title stretching back to the 1880s, and because the first corporate entity that

acquired the mineral rights back then still appeared — due to an indexing error made by the county recorder's office in Guernsey County in 1891 — to be the owner of record of the mineral rights in 1954 when that entity was served with the quiet-title complaint and a default judgment was issued against it, Mid-Ohio Coal is bound by that valid judgment against its predecessor in interest. Mid-Ohio's ownership interest in the underground minerals has therefore been extinguished. We reverse the trial court's judgment that reached a different conclusion, and we remand the case so that the trial court can issue a final judgment in favor of the plaintiffs.

**The Key Facts**

{¶3} The dispute in this case arises from a lengthy and complicated history of property conveyances that date back to the early 1880s. All parties agree that the Williamses are the rightful owners of a particular 35-acre tract of land. The parties disagree, though, about the rightful owner of the underground commodities beneath that land.

{¶4} In the 1880s, John and Mary Leeper were the owners of the full fee-simple interest in approximately 50 acres of land in Guernsey County. By 1899, the property had been divided into separate 35-acre and 15-acre tracts, with ownership of the two tracts sometimes in the hands of the same owner or owners and other times not. Today, plaintiffs Doris and Robert Williams own the surface rights in both tracts.

{¶5} Ownership of the mineral rights beneath the land is a more complicated story. Ownership of the surface rights was severed from ownership of the underground minerals beneath the entire 50-acre property starting in 1884, when the mineral rights were conveyed to the Wheeling & Lake Erie Coal Company (Wheeling Coal).

**{¶6}** Wheeling Coal in the early 1890s sought and received a court order in Lorain County changing Wheeling Coal's name to Cambridge & Elyria Coal Company. Unfortunately, that name change was indexed improperly in 1891 in the county recorder's office in Guernsey County, where the court order approving the name change was indexed under "Court Common Pleas Lorain Co." rather than "Wheeling & Lake Erie Coal Company."

**{¶7}** The Cambridge & Elyria Coal Company soon thereafter conveyed its interest in the underground minerals to the Consolidated Cambridge Coal Company. The deed for that conveyance was properly listed in the direct index in the recorder's office in Guernsey County under "Cambridge and Elyria Coal Co.," and the recorder's reverse index listed the deed under the name "The Consolidated Cambridge Coal Co." Though the 1891 deed itself stated that the Cambridge & Elyria Coal Company was a successor to Wheeling Coal, a title examiner searching for the name "Wheeling and Lake Erie Coal Company" in either the direct or reverse index would not — due to the 1891 indexing error — have discovered Wheeling Coal's name-change decree, and therefore a title examiner relying solely on the index would not have linked the 1891 conveyance of the mineral rights by Cambridge and Elyria Coal Company on the one hand with the earlier acquisition of those mineral rights by Wheeling Coal on the other.

**{¶8}** After a series of subsequent conveyances and name changes, ownership of the underground minerals passed from Consolidated Cambridge Coal Company to an entity called the Cambridge Collieries Company. Then in 1940, foreclosure proceedings against the Cambridge Collieries Company resulted in the mineral rights being conveyed to Mid-Ohio Coal through a deed from a court-appointed special master. Under the terms of that deed, Mid-Ohio received "all the certain lands, coal, mining rights and privileges

acquired by the Company under the following deeds . . . John Leeper and wife to The Wheeling & Lake Erie Coal Company."

{¶9}  In 1943, the surface rights to the full 50 acres of land were conveyed to Carl A. Williams and Fannie R. Williams.  Then, in 1954, those joint owners filed a quiet-title action in Guernsey County to clear up any uncertainty about ownership of the minerals under their property.  A title search conducted by Carl and Fannie Williams for that litigation evidently failed — presumably because of the indexing error dating back to 1891 — to uncover the fact that Mid-Ohio Coal was the then-current owner of the minerals beneath the Williamses' land.

{¶10} The attorney for Carl and Fannie Williams in the 1954 lawsuit filed with the trial court at that time an affidavit claiming that Wheeling Coal, which had acquired the mineral rights in 1884 (and, in light of what we now know was an indexing error, still appeared in 1954 to be the owner of those rights), was apparently in 1954 a defunct corporation with no agents or officers appointed to receive service and no known address.  Wheeling Coal was then served notice of the quiet-title lawsuit by publication.  After that notice circulated for six weeks with no response from Wheeling Coal, the court quieted title to the full fee-simple estate — both the surface rights and the underground-mineral rights — in favor of Carl and Fannie Williams.

{¶11} Doris and Robert Williams — the plaintiffs in this case — received their property interest through an April 2023 survivorship deed.  That same year, Doris and Robert filed this new action to again quiet title to the mineral estate beneath the 35-acre tract, naming Mid-Ohio Coal and Columbia Gas as defendants in the action.  (Columbia Gas soon renounced any interest in the property.)

**{¶12}** The Williamses and Mid-Ohio Coal filed competing motions for summary judgment in the trial court. Doris and Robert argued in part that Mid-Ohio was bound by the 1954 default judgment against Wheeling Coal under the doctrine of claim preclusion. Mid-Ohio argued in response that it was not bound by that judgment because Mid-Ohio had not been named as a party in the 1954 quiet-title suit.

**{¶13}** The trial court granted Mid-Ohio's summary-judgment motion in the 2023 quiet-title case after finding that there was "no privity of interest" between Wheeling Coal and Mid-Ohio and that Mid-Ohio remained the owner of the underground minerals by virtue of the 1940 deed from the special master. The Williamses now appeal.

## Standard of Review

**{¶14}** An appellate court reviews with fresh eyes a lower court's decision granting a motion for summary judgment. *McCord v. Ron Laymon Trucking Co.*, 2005-Ohio-4399, ¶ 19 (5th Dist.). Summary judgment should be granted only if it appears from the pleadings and other evidence in the case that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.* at ¶ 22; Civ.R. 56(C).

## A Diligent Examination of the Index of Recorded Instruments in Guernsey County in 1954 Would Not Have Indicated that Mid-Ohio Coal Was the Owner of the Mineral Rights That Were Conveyed to Wheeling Coal in 1884

**{¶15}** Mid-Ohio Coal argues here that the failure of the 1954 plaintiffs to name Mid-Ohio as a party to the quiet-title action that year prevents Mid-Ohio from being bound by that judgment now. According to Mid-Ohio, it acquired the mineral rights

through the 1940 deed from the special master, and that ownership interest, Mid-Ohio tells us, should have been recognized in the 1954 action.

{¶16} A chain of title to real estate is composed of a series of linked time periods, with one link between each owner and the next. 14 Powell, *Real Property*, § 82.03(2)(a) (Wolf Rev. 2026). By connecting each of those links, the chain of title "produces a chronological succession of conveyances, all interconnected, that link the current titleholder to the original conveyance from the sovereign." *Id.*

{¶17} Under the grantor-grantee indexing system — the type that is used in Guernsey County — an instrument is indexed in two places: in one place, all the grantors for a particular time period are listed, and in the other place, all the grantees are similarly listed. 1 Thomas Sherman, *Ohio Residential Real Estate*, § 4.06 (2025). To construct a chain of title under this indexing system, a title abstractor first locates a prospective seller in the grantee index. *Id.* The abstractor then goes further back in the grantee index until he finds the name of the individual or entity listed as the grantor in the deed to the prospective seller. *Id.* That process is repeated until the relevant length of the chain of title is established.

{¶18} In this case, an 1891 indexing mistake made by the county recorder in Guernsey County caused a break in the chain of title for the underground minerals in question. The mineral rights were first severed from the surface rights in 1884 when the Leepers — as grantors — conveyed the mineral rights to Wheeling Coal. Wheeling Coal — while it was still the owner of the mineral rights — changed its name to the Cambridge & Elyria Coal Company. The name-change decree, though, was not indexed using any language that would have allowed an examiner to discover that document when searching in the index for an entity with the name "Wheeling and Lake Erie Coal Company."

**{¶19}** Because of that name change, the next conveyance of the mineral rights was made by Wheeling Coal's successor — the Cambridge & Elyria Coal Company — rather than by Wheeling Coal. A search of the grantor-grantee index, though, provided any diligent title examiner with no link between Wheeling Coal and that successor, and so such a title examiner could not discover that the interest formerly held by Wheeling Coal had been conveyed numerous times beginning in 1891 and continuing until 1940, when Mid-Ohio Coal acquired the mineral rights through the special master's deed. Though the deed under which Mid-Ohio received its interest was recorded in Guernsey County, that 1940 deed was not within or connected to the chain of title beginning with the Leepers' 1884 conveyance to Wheeling Coal.

**{¶20}** A person dealing with land is "chargeable with constructive notice of properly recorded instruments *in the chain of title.*" *Ford v. Baska*, 2017-Ohio-4424, ¶ 13 (7th Dist.) (emphasis added), quoting *Ferguson v. Zimmerman*, 1986 Ohio App. LEXIS 5343, *14 (2d Dist. Jan. 16, 1986). And constructive notice is "imputed notice" that "exists by reason of the proper filing and recording of a conveying instrument." *In re Geraci*, 507 B.R. 224, 230 (Bankr. S.D.Ohio 2014), citing *Columbus Gas Transm. Corp. v. Bennett*, 71 Ohio App.3d 307, 315 (2d Dist. 1990).

**{¶21}** "An instrument which is recorded, but which cannot be traced back to the original grant because some previous instrument connecting it to the chain of title is unrecorded, lies outside the chain of title." *Bank of Am., N.A. v. Corzin*, 2010 U.S. Dist. LEXIS 8755, *15 (N.D.Ohio Feb. 2, 2010). *See also Columbia Gas Transm. Corp.* at 315 ("a document erroneously recorded . . . is not within the chain of title and does not provide constructive notice to subsequent bona fide purchasers").

{¶22} For a recorded instrument to be effective against subsequent purchasers, "it must operate to give notice to those looking through the grantor-grantee index." *Corzin* at \*15. Imputing constructive notice of an instrument that lies outside the chain of title merely because it was recorded "'is wholly inconsistent with equitable principles." *Columbia Gas Transm. Corp.* at 315, quoting 66 Am.Jur.2d, Records and Recording Acts, § 114, at 410 (1973).

{¶23} The Supreme Court of Ohio has explained that "[t]he only fair rule is to hold that the record of an instrument will not afford constructive notice, if it is outside the chain under which a purchaser or incumbrancer claims title or lien. To hold otherwise would be to impose upon such parties the duty of making a general search of every instrument filed for record, without according facilities therefor." *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 337 (1984), quoting 1 Patton, *Land Titles*, § 69, at 231-232 (2d Ed. 1957). See also *Jenning's Lessee v. Wood*, 20 Ohio 261, 267 (1851) (where the county recorder makes a mistake that prevents a recorded instrument from being located, that instrument cannot serve as constructive notice to others about the interest's existence).

{¶24} Mid-Ohio Coal claims that it is the holder of the underground-mineral rights that were first conveyed to Wheeling Coal in 1884 and then — through a series of corporate name changes and conveyances — ended up being conveyed to Mid-Ohio in 1940 via a deed from a court-appointed special master. Yet a diligent title search in Guernsey County in 1954 would have indicated that Wheeling Coal was still the owner of the underground minerals then, and no title examiner using the index in the county recorder's office could have connected Wheeling Coal to the Cambridge & Elyria Coal Company and then from there to later grantees, including Mid-Ohio Coal.

**{¶25}** In support of its position that only had it been named as a defendant in the 1954 quiet-title suit could Mid-Ohio Coal be bound by the judgment in favor of Carl and Fannie Williams in that case, Mid-Ohio directs our attention to a 2015 decision from our court. In that case — *Mid-Ohio v. Brown*, 2015-Ohio-5111 (5th Dist.) — we determined that Mid-Ohio was not bound by a 1993 default-judgment entry that was issued in a quiet-title action in which Mid-Ohio itself had not been sued. *Id*. at ¶ 2 and ¶ 27. Our court concluded that Mid-Ohio should have been named as a defendant in that 1993 quiet-title action because Mid-Ohio "was the record holder of the subsurface rights via the 1940 Special Master's Deed" and because Mid-Ohio "was within the line of title" via two properly recorded instruments. *Id*. at ¶ 27.

**{¶26}** Today's case is different. As explained above, the 1891 decree that changed Wheeling Coal's name to Cambridge & Elyria Coal Company was not indexed in a manner that would have enabled the Williamses in the 1954 quiet-title case to discover that Wheeling Coal's interest had been the subject of a series of conveyances and corporate name changes between 1891 and 1940. And while Mid-Ohio argues that Wheeling Coal's status as a defunct entity should have prompted a deeper inquiry by the 1954 plaintiffs, Mid-Ohio does not propose any action that could have been taken in 1954 that would have led to the discovery of Mid-Ohio's claimed interest.

**{¶27}** Because the recorded and indexed chain of title pointed to Wheeling Coal as the owner of the underground-mineral rights in question from 1891 until 1954, the 1954 plaintiffs cannot be faulted for failing to name Mid-Ohio as a party to their lawsuit.

## The 1954 Default-Judgment Entry is Binding on Mid-Ohio Coal

**{¶28}** Doris and Robert Williams argue that the doctrine of claim preclusion bars Mid-Ohio Coal from asserting any interest in the underground minerals because the 1954

default-judgment entry awarded ownership of the full fee-simple estate to the Williamses' predecessors in interest, Carl and Fannie Williams.  We agree.

{¶29} The doctrine of res judicata or claim preclusion provides that "a final judgment or decree rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent action on the same claim between the same parties or those in privity with them." *Brooks v. Kelly*, 2015-Ohio-2805, ¶ 7.

{¶30} Claim preclusion is marked by four key elements: "'(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 23, quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

{¶31} The first required element — whether there is a prior final and valid decision on the merits — is met in this case.  The trial court in Guernsey County issued in 1954 a journal entry accepting as true all of the allegations in Carl and Fannie Williamses' petition to quiet title to the property.  In its entry, that court found that Carl and Fannie were the fee-simple owners of the property and that the two of them were in actual possession of the property.  Though the 1954 decision was rendered upon default judgment, "[e]ven in default, a trial court is required to consider the issues and therefore a determination on such is a decision on the merits." *Martel v. Am. Family Ins. Co.*, 2012-Ohio-1486, ¶ 45 (5th Dist.)

{¶32} We jump next to the third *Lycan* factor, which calls for us to examine whether the second action — this case — raises claims that were or could have been

litigated in the first action. In this declaratory-judgment and quiet-title action, Doris and Robert Williams in 2023 asked the trial court to find that they are the rightful owners of the mineral rights beneath the 35-acre tract. In the first action — the 1954 lawsuit — Carl and Fannie Williams had also asked the trial court to quiet title to the property, including the mineral rights, in their favor. Because ownership of the mineral rights was decided by the trial court in 1954, and because that same issue is being litigated by the parties in this case now, we find that the third element of claim preclusion is met.

{¶33} The fourth *Lycan* factor focuses on whether the second action arose out of the same transaction or occurrence as the previous lawsuit. Carl and Fannie Williams sought in the 1954 lawsuit a declaration that they were the owners of the full fee-simple estate of roughly 50 acres of land in Guernsey County, including the mineral rights that appeared at that time to be owned by Wheeling Coal. Now in this lawsuit — the second action — Doris and Robert Williams seek a declaration that they are the rightful owners of the underground minerals beneath the same land that was the subject of the 1954 lawsuit. Because both lawsuits revolve around the ownership of the same property interest that was formerly held by Wheeling Coal, we find that the two lawsuits share the same "common nucleus of operative facts," and so the fourth claim-preclusion element is met. *See U.S. Bank Trust, N.A. v. Watson*, 2020-Ohio-3412, ¶ 23 (3d Dist.) ("[f]or purposes of claim preclusion, a 'transaction' has been defined as a 'common nucleus of operative facts'").

{¶34} We turn now to the second claim-preclusion element identified in the Supreme Court's four-part *Lycan* framework described above in **paragraph 30**: whether the two actions — that is, the 1954 case and the current one — involve the same parties or their privies. The plaintiffs' side of the case is easy: The parties here all agree

that Robert and Doris Williams are in privity with the 1954 plaintiffs through successive property ownership. The issue of privity on the defense side of the case is where the parties' views diverge.

{¶35} "As a general matter, privity 'is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.'" *Thompson v. Wing*, 70 Ohio St.3d 176, 184 (1994), quoting *Burszewski v. United States*, 181 F.2d 419, 423 (3d Cir. 1950). One is generally found to be in privity with another "if he succeeds to an estate or an interest formerly held by the other . . . because privity is a succession of interest or relationship to the same thing." *Columbus v. Union Cemetery Assn.*, 45 Ohio St.2d 47, 51 (1976). *See also Wright v. Heller*, 2018-Ohio-149, ¶ 32 (1st Dist.) ("In this case, privity . . . is established because the Hellers are succeeding owners of the same property"); *Union Cemetery Assn.* at 51 ("successive ownership interests in the same property are sufficient to sustain the flow of privity").

{¶36} Mid-Ohio Coal argues here that it cannot be in privity with Wheeling Coal for purposes of claim preclusion because Mid-Ohio had acquired its interest in the underground minerals in 1940 before the 1954 default-judgment decision was rendered by the trial court. As explained above, though, a search of the land records in 1954 would not have revealed Mid-Ohio as the owner then of the mineral rights. A title examination would have indicated instead that Wheeling Coal was the owner, and Wheeling Coal was duly named as a defendant in the 1954 lawsuit as a result.

{¶37} In *Winland v. Christman*, the Seventh District concluded that, despite not being named as parties in a prior quiet-title action, the Christman appellants were bound by a prior default judgment in that earlier case because they were in privity — through

successive ownership interests — with the parties who had been named in that lawsuit. *Winland v. Christman*, 2019-Ohio-2408, ¶ 54-55 (7th Dist.) ("Any interest Nova acquired came by way of the Auditor's Deed referencing the Scarborough Heirs and specifically Watson's and Bentley's interest. Thus, Nova was in privity with Watson and Bentley. When Nova died, his property . . . passed to appellants . . . . Therefore, appellants were in privity with the named parties in the 2000 ODMA lawsuit").

{¶38} Just as in our case, the appellants in *Winland* had acquired their interest in some underground-mineral rights (in that case in 1992) before the default judgment was issued (in that case in February 2001), but a defect in the chain of title prevented any diligent title examiner from identifying those appellants as the current owners of the oil and gas rights in question when the lawsuit was filed in 2000. *Id.* at ¶ 23 ("the Auditor's Deed is not contained in the Grantor/Grantee Index of the county recorder's office when conducting a search for Maggie, Harlan, Edith, Watson, Bentley, or the 'Scarborough Heirs.' Instead, the Grantor/Grantee Index only lists the Auditor's Deed under Nova Christman and the Monroe County Auditor"). Despite the appellants not being named in the lawsuit, the Seventh District in *Winland* concluded that the appellants could still be bound by the judgment under claim preclusion because they were in privity with the parties who had been named in the action. *Id.* at ¶ 49 (because "the parties [were] not identical to the parties in the 2000 ODMA Lawsuit," in order for res judicata to apply, the "appellants must be in privity with Watson and Bentley or their heirs, devisees, or legatees").

{¶39} After examining the documents filed in the trial court by the parties in our case, we find that Mid-Ohio's interest in the mineral rights can be traced back to Wheeling Coal's interest as follows: John and Mary A. Leeper conveyed the mineral rights to

Wheeling Coal in 1884; Wheeling Coal in 1891 changed its name to Cambridge and Elyria Coal Company; Cambridge and Elyria Coal Company conveyed its rights in the mineral estate in 1891 to the Consolidated Cambridge Coal Company; Consolidated Cambridge Coal Company changed its name in 1895 to the Cambridge Consolidated Coal Company; Cambridge Consolidated Coal Company conveyed its interest in the mineral estate to the Cambridge and Muskingum Valley Coal Company in 1906; Cambridge and Muskingum Valley Coal Company in 1907 changed its name to the Cambridge Collieries Company; and finally, in 1940, the underground-mineral rights held by the Cambridge Collieries Company was transferred to Mid-Ohio Coal by a Special Master's deed.

**{¶40}** In light of the above, we find that the second *Lycan* element is met here. Mid-Ohio is in privity with Wheeling Coal — the party named in the 1954 lawsuit — by succeeding to the mineral-estate interest formerly held by Wheeling Coal. And though Mid-Ohio may have acquired its interest in 1940, Wheeling Coal still appeared to be the entity that held – according to the grantor-grantee index in the county recorder's office – the underground-mineral rights in 1954 when the first quiet-title suit was filed.

**{¶41}** Having found that all of the required claim-preclusion elements are met in this case, we conclude that Mid-Ohio Coal is barred from asserting any interest in the mineral rights underlying the 35-acre tract. We therefore need not address the parties' additional arguments about the meaning and effect of the conveyance language contained in the 1940 Special Master's deed.

{¶42} The judgment of the Court of Common Pleas of Guernsey County is reversed, and the case is remanded to that court with instructions to enter a final judgment in favor of plaintiffs Doris and Robert Williams.  Costs are to be paid by defendant Mid-Ohio Coal Company.

By: Gormley, J.;

King, P.J. and

Hoffman, J. concur.