[Cite as *Wu v. Park*, 2026-Ohio-2263.]

## IN THE OHIO COURT OF APPEALS
### FIFTH APPELLATE DISTRICT
### DELAWARE COUNTY, OHIO

| | |
|---|---|
| ALBY WU | Case No. 25 CAE 11 0108 |
| Plaintiff - Appellant | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Case Nos. 24 CVH 03 0277 & 24 CVH 12 1259 |
| CRAIG BLAIR PARK | Judgment: Affirmed |
| Defendant - Appellee | Date of Judgment Entry: June 15, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Robert G. Montgomery, Judges

**APPEARANCES:** ALBY WU, for Plaintiff-Appellant; CHARLES H. COOPER JR, ABIGAIL F. CHIN, for Defendant-Appellee.

*King, P.J.*

{¶ 1} Plaintiff-Appellant, Alby Wu, appeals several judgment entries of the Delaware County Common Pleas Court denying her numerous motions. Defendant-Appellee is Craig Blair Park. We affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

{¶ 2} The dispute between the parties spans some seven years, a multitude of filings, and courts in Delaware and Franklin Counties.

{¶ 3} In 2018, the parties met and entered into a brief dating relationship. After the relationship ended, Wu made allegations of sexual assault against Park. Park was never indicted on any criminal offenses.

{¶ 4} On April 9, 2020, based upon Wu's actions of stalking Park, both in person and online for several months, Park filed a petition for dating violence civil protection

order against Wu in Delaware County (Case No. 20 DV H 04 200). Wu signed a No Contact and Stay Away Agreement which the trial court adopted as an order on May 15, 2020. Wu was to have no contact with Park for a period of five years.

{¶ 5} On March 19, 2021, Wu filed a pro se complaint against Park in Delaware County, alleging libel, assault and battery, fraudulent misrepresentation, breach of contract, and intentional infliction of emotional distress (Case No. 21 CV H 03 0112). On April 22, 2021, Park filed an answer and counterclaim against Wu, alleging breach of the no contact order, defamation, false light, invasion of privacy, tortious interference, civil liability for criminal acts under R.C. 2307.60 for violating the no contact order, frivolous conduct, abuse of process, malicious prosecution, and vexatious litigant. On April 27, 2021, Wu filed a pro se answer to the counterclaim and added claims to her complaint, alleging defamation, abuse of process, frivolous conduct in filing civil claims, intentional infliction of emotional distress, punitive damages, and vexatious litigator. On November 10, 2021, Wu filed, by and through counsel, an amended complaint against Park, alleging invasion of privacy, abuse of process, and intentional infliction of emotional distress. After counsel withdrew, Wu filed a pro se second amended complaint against Park on December 27, 2021, alleging abuse of process, intentional infliction of emotional distress, and falsification. On February 15, 2022, Park filed an amended counterclaim, alleging civil liability for criminal acts under R.C. 2307.60 for violating the no contact order, frivolous conduct, and vexatious litigant. On March 11, 2022, the parties agreed to voluntarily dismiss all claims and counterclaims with prejudice.

{¶ 6} On March 21, 2022, Wu obtained an ex parte civil stalking protection order against Park from the Franklin County Common Pleas Court. The ex parte order was in effect for one month pending a hearing. During that time, Wu contacted several law

enforcement agencies (The Ohio State University Police, City of Columbus Police, Hilliard Police) reporting that Park violated the ex parte order by appearing at her apartment, contacting her, and sending her threatening text messages. City of Columbus Police investigated the text messages allegedly sent to Wu by Park. After the investigation, the investigating detective (Detective Zachary Rosen) determined he had probable cause to charge Wu with falsification in Franklin County; the charges were eventually dismissed.

{¶ 7} On April 4, 2023, Wu filed a pro se complaint against Park in Delaware County, alleging civil liability for criminal acts under R.C. 2307.60 arising from the Franklin County ex parte order i.e., violating protection order, aggravated menacing, and intimidation (Case No. 23 CV H 04 0192). On April 27, 2023, Wu dismissed the complaint without prejudice.

{¶ 8} On March 13, 2024, Wu refiled her pro se April 2023 dismissed complaint against Park in Delaware County, again alleging civil liability for the same criminal acts under R.C. 2307.60 arising from the aforementioned ex parte order (Case No. 24 CV H 03 0277). On May 8, 2024, Wu filed an amended complaint against Park, adding claims for malicious prosecution and punitive damages. On August 30, 2024, Park filed an amended answer and a counterclaim against Wu, alleging spoliation, civil liability for criminal acts under R.C. 2307.60 for violating the no contact order, and falsification.

{¶ 9} On September 27, 2024, Wu filed a partial Civ.R. 12(C) motion to dismiss Park's counterclaim for civil liability for criminal acts under R.C. 2307.60, arguing she did not violate a protection order as alleged because the document was a consent agreement. By judgment entry filed October 30, 2024, the trial court denied the motion, finding the no contact/consent order was enforceable under R.C. 2919.27 and therefore Park's counterclaim stated a valid claim.

{¶ 10} On December 11, 2024, Wu filed a pro se complaint against Park in Delaware County, alleging civil liability for criminal acts under R.C. 2307.60 arising from her prior allegations of sexual assault (Case No. 24 CV H 12 1259).

{¶ 11} On December 12, 2024, the trial court consolidated the two cases.

{¶ 12} On January 16, 2025, Park filed a Civ.R. 12(C) motion for judgment on the pleadings on Wu's claim in the 1259 case, arguing res judicata as the sexual assault claims therein were the same claims voluntarily dismissed with prejudice back in March 2022. Park sought a sanction for frivolous conduct and an order to show cause why Wu should not be declared a vexatious litigator.

{¶ 13} On January 22, 2025, Park filed a motion for partial summary judgment on his spoliation counterclaim, arguing Wu purposely sold her cellphone to avoid a forensic examination of her text messages. On the same date, Park filed a motion for summary judgment on Wu's claims in the 277 case: civil liability for criminal acts under R.C. 2307.60 arising from the ex parte order and malicious prosecution. Park argued there was no competent evidence that he sent Wu threatening text messages violating the ex parte order and he never initiated nor continued criminal proceedings against Wu.

{¶ 14} On January 24, 2025, Wu filed a motion for summary judgment on Park's counterclaim, arguing there was no evidence that she willfully and intentionally destroyed evidence, i.e., her cellphone, and he could not establish falsification. On the same date, Wu filed a motion for partial summary judgment on her claim in the 1259 case: civil liability for criminal acts under R.C. 2307.60 arising from her prior allegations of sexual assault.

{¶ 15} By judgment entry filed April 17, 2025, the trial court granted Park's Civ.R. 12(C) motion for judgment on the pleadings on Wu's 1259 claim, granted in part Wu's

motion for summary judgment on Park's falsification claims, and denied the remaining motions. This judgment entry contains an extensive review of the facts and several lawsuits filed by Wu against others associated with her claims against Park, including attorneys and a police detective.

{¶ 16} On August 5, 2025, the trial court filed a judgment entry to address several motions in limine prior to trial. Per this entry, Wu was prohibited from mentioning any allegations of rape or sexual/physical assault (irrelevant and prejudicial) and from questioning Parks on his personal relationship with others, including coworkers (irrelevant).

{¶ 17} A jury trial on the remaining claims commenced on August 14, 2025 (Wu's claims for civil liability for criminal acts under R.C. 2307.60 for violating the ex parte order, aggravated menacing, intimidation, and intimidation of a witness, and malicious prosecution, and Park's counterclaims for spoliation, part of his falsification claim, and civil liability for criminal acts under R.C. 2307.60 for violating the no contact order). The jury found in favor of Park on Wu's claims, found in favor of Park on his counterclaims, and awarded Park $35,000 in compensatory damages, $75,000 in punitive damages, and reasonable attorney fees. By judgment entry filed August 21, 2025, the trial court reduced the punitive damages award to $70,000.

{¶ 18} On September 5, 2025, Wu filed four motions for judgment notwithstanding the verdict ("JNOV") on Park's claims for civil liability for criminal acts under R.C. 2307.60, falsification, spoliation, and the jury's award of punitive damages and attorney fees. On September 10, 2025, Wu filed a motion to vacate the award of punitive damages and attorney fees.

{¶ 19} A hearing on attorney fees was held before a magistrate on September 11, 2025. By decision filed September 18, 2025, the magistrate awarded Park $191,003.38 in attorney fees and costs.

{¶ 20} By judgment entry filed October 2, 2025, the trial court denied Wu's motions for JNOV, but reduced the punitive damages award to $50,000.

{¶ 21} On October 2, 2025, Wu filed objections to the magistrate's award of attorney fees. By judgment entry filed November 5, 2025, the trial court overruled Wu's objections and adopted the magistrate's decision, but reduced the attorney fees award by $1,455.00.

{¶ 22} On November 26, 2025, Wu filed a notice of appeal.

{¶ 23} On December 3, 2025, Wu filed a renewed motion for JNOV on the spoliation claim. On December 5, 2025, Wu filed a motion for new trial. On December 19, 2025, this court remanded the case to the trial court to rule on the pending motions. By judgment entry filed January 8, 2026, the trial court denied both motions.

{¶ 24} On January 15, 2026, Wu filed a renewed motion for JNOV on the spoliation claim and a renewed motion for new trial. By judgment entry filed January 16, 2026, the trial court denied both motions.

{¶ 25} On February 9, 2026, Wu filed an amended notice of appeal and assigned the following assignments of error:

I

{¶ 26} "THE TRIAL COURT ERRED IN DENYING WU'S SEPTEMBER 27, 2024 CIV.R. 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS."

## II

{¶ 27} "THE TRIAL COURT ERRED IN GRANTING PARK'S JANUARY 16, 2025 CIV.R. 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS WHEN THE TRIAL COURT SUA SPONTE CONVERTED THE MOTION INTO A MOTION FOR SUMMARY JUDGMENT."

## III

{¶ 28} "THE TRIAL COURT IN DENYING WU'S JANUARY 24, 2025 MOTION FOR PARTIAL SUMMARY JUDGMENT ON HER R.C. 2307.60 CLAIM FOR CIVIL LIABILITY ARISING FROM RAPE, SEXUAL BATTERY, GROSS SEXUAL IMPOSITION, SEXUAL IMPOSITION, AND ASSAULT, AND WU'S MOTION SHOULD HAVE BEEN GRANTED."

## IV

{¶ 29} "THE TRIAL COURT ERRED IN DENYING WU'S JANUARY 24, 2025 MOTION FOR SUMMARY JUDGMENT ON PARK'S R.C. 2921.13 FALSIFICATION CLAIM."

## V

{¶ 30} "THE TRIAL COURT ERRED BY DENYING WU'S JANUARY 24, 2025 MOTION FOR SUMMARY JUDGMENT ON PARK'S SPOLIATION CLAIM."

## VI

{¶ 31} "THE TRIAL COURT ERRED IN DENYING WU'S SEPTEMBER 5, 2025 FIRST MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON PARK'S R.C. 2307.60 CLAIM FOR R.C. 2919.27 VIOLATING A PROTECTION ORDER CLAIM."

VII

{¶ 32} "THE TRIAL COURT ERRED IN DENYING WU'S SEPTEMBER 5, 2025 THIRD MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON PARK'S SPOLIATION CLAIM."

VIII

{¶ 33} "THE TRIAL COURT ERRED IN DENYING WU'S DECEMBER 5, 2025 MOTION FOR NEW TRIAL."

IX

{¶ 34} "THE TRIAL COURT ERRED IN STATING, IN ITS DECISION ON WU'S MOTION FOR NEW TRIAL, THAT 'THE COURT EVENTUALLY FOUND WU IN DIRECT CONTEMPT OF COURT BUT DECLINED TO IMPOSE A PUNISHMENT FOR THAT CONTEMPT' AND ANY FINDING IN DIRECT CONTEMPT--IF ONE WAS EVER MADE--MUST BE VACATED."

X

{¶ 35} "THE TRIAL COURT ERRED IN STATING THAT 'WU'S FILINGS ARE FRIVOLOUS' IN ITS DECISION, WHERE IT FAILED TO HOLD THE HEARING REQUIRED BY BINDING OHIO SUPREME COURT PRECEDENT."

I

{¶ 36} In her first assignment of error, Wu claims the trial court erred in denying her September 27, 2024 Civ.R. 12(C) motion for judgment on the pleadings on Park's counterclaim for civil liability for criminal acts under R.C. 2307.60. We disagree.

{¶ 37} Our standard of review is de novo. *Columbus v. Sanders,* 2012-Ohio-1514 (5th Dist.); *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable

inferences must be drawn in favor of the nonmoving party. *Kramer v. Installations Unlimited, Inc.,* 2002-Ohio-1844 (5th Dist.). De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. *Brown v. Scioto County Board of Commissioners,* 87 Ohio App.3d 704, 711 (4th Dist. 1993).

{¶ 38} Civ.R. 12(C) governs judgment on the pleadings and states: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Under the rule, "dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565, 570 (1996). The rule allows the court to consider the complaint and any answers and any attached materials to the pleadings. *Crenshaw v. Howard,* 2022-Ohio-3914, ¶ 13 (8th Dist.). Civ.R. 12(C) motions are specifically for resolving questions of law; therefore, the rule requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law. *Peterson v. Teodosio,* 34 Ohio St.2d 161, 165-166 (1973).

{¶ 39} In Count Two of his counterclaim, Park alleged civil liability for violations of criminal statutes under R.C. 2307.60. R.C. 2307.06(A)(1) permits anyone injured by a criminal act to recover full damages in a civil action including the costs of maintaining the civil action and attorney fees, and also may recover punitive or exemplary damages. Park alleged Wu violated R.C. 2921.13 (making false statements) and R.C. 2919.27 (violating a protection order).

{¶ 40} In her Civ.R. 12(C) motion, Wu sought a judgment on the pleadings on this counterclaim, arguing she did not violate a protection order as alleged because the document was a consent agreement.

{¶ 41} R.C. 2919.27(A)(1) states: "No person shall recklessly violate the terms of . . . [a] protection order issued or *consent agreement* approved pursuant to section 2919.26 or 3113.31 of the Revised Code." (Emphasis added.) Under R.C. 3113.31, a trial court may "approve any consent agreement to bring about a cessation of domestic violence against the . . . persons with whom the respondent is or was in a dating relationship."

{¶ 42} Park filed a petition for dating violence civil protection order under R.C. 3113.31 (Case No. 20 DV H 04 200). The parties entered into a no contact/consent agreement and the trial court adopted it as an order on May 15, 2020, resolving the petition filed under R.C. 3113.31. In its October 30, 2024 judgment entry denying Wu's Civ.R. 12(C) motion, the trial court noted because the no contact/consent agreement was filed and approved under R.C. 3113.31, it was enforceable under R.C. 2919.27 and Park's Count Two was a valid claim. Under our de novo review, we agree.

{¶ 43} Upon review, we find the trial court did not err in denying Wu's Civ.R. 12(C) motion for judgment on the pleadings as to Park's Count Two in his counterclaim.

{¶ 44} Assignment of Error I is denied.

## II, III

{¶ 45} In her second assignment of error, Wu claims the trial court erred in granting Park's January 16, 2025 Civ.R. 12(C) motion for judgment on the pleadings on her claim in the 1259 case when the trial court sua sponte converted the motion into a motion for summary judgment.

{¶ 46} In her third assignment of error, Wu claims the trial court erred in denying her January 24, 2025 motion for partial summary judgment on her claim in the 1259 case: civil liability for criminal acts under R.C. 2307.60 arising from her prior allegations of sexual assault.

{¶ 47} We disagree with both assignments of error.

{¶ 48} On December 11, 2024, Wu filed a complaint against Park alleging civil liability for criminal acts under R.C. 2307.60 arising from her prior allegations of sexual assault (Case No. 24 CV H 12 1259).

{¶ 49} On January 16, 2025, Park filed a Civ.R. 12(C) motion for judgment on the pleadings regarding this case, arguing res judicata as the sexual assault claims therein were the same claims voluntarily dismissed with prejudice back in March 2022 in Case No. 21 CV H 03 0112. Attached to his motion were all the complaints filed in the 112 case, one of which set forth the claims for sexual assault and battery; also attached was the notice of voluntary dismissal with prejudice of all claims.

{¶ 50} On January 24, 2025, Wu filed a motion for summary judgment on her 1259 complaint. Park filed a memorandum contra and attached certified copies of Wu's 112 complaints, the voluntary dismissal, and the 1259 complaint.

{¶ 51} In its April 14, 2025 judgment entry, the trial court considered Park's motion under a summary judgment standard because Wu had filed a motion for summary judgment. The trial court could have ruled under either motion. *Austin v. OhioHealth Mansfield Hospital,* 2025-Ohio-4932, ¶ 38 (5th Dist.) ("A court is permitted to consider both the complaint and the answer as well as any material incorporated by reference or attached as exhibits to those pleadings when ruling on a motion for judgment on the

pleadings"). Because Wu filed a motion for summary judgment, the trial court did not err in considering the parties' arguments under a summary judgment standard.

{¶ 52} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Regarding summary judgment, the Supreme Court stated the following in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448 (1996):

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

{¶ 53} In *Leech v. Schumaker,* 2015-Ohio-4444, ¶ 13 (5th Dist.), this court explained the following:

> It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is

delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 54} As an appellate court reviewing summary judgment motions, we stand in place of the trial court and review the issues de novo, under the same standards and evidence as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶ 55} In granting Park's motion and denying Wu's motion, the trial court found res judicata applied. Res judicata is defined as "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Township*, 73 Ohio St.3d 379 (1995), syllabus. Res judicata or claim preclusion applies when there is: "'(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Lycan v. Cleveland,* 2022-Ohio-4676, ¶ 23, quoting *Hapgood v. Warren,* 127 F.3d 490, 493 (6th Cir. 1997); *accord Williams v. Mid-Ohio Coal Co.,* 2026-Ohio-1245, ¶ 30.

{¶ 56} The voluntary dismissal with prejudice in the 112 case was a final judgment on the merits. *Tower City Properties v. Cuyahoga County Board of Revision,* 49 Ohio St,3d 67, 69 (1990) ("a dismissal with prejudice is an adjudication on the merits"). "Therefore, under the doctrine of res judicata, a voluntary dismissal with prejudice bars future litigation on the rights asserted, or those that could have been asserted in the prior action." *Persaud v. St. John Medical Center,* 2017-Ohio-7178, ¶ 22 (8th Dist.), citing *Dreger v. Dundas,* 1990 Ohio App. LEXIS 4985 (8th Dist. Nov. 15, 1990). The first prong of the res judicata test is satisfied.

{¶ 57} The two actions involved the same parties, Wu and Park. The second prong of the res judicata test is satisfied.

{¶ 58} Was the claim raised in the 1259 case a claim that was or could have been litigated in the 112 case? Wu argues she voluntarily dismissed her claims in the 112 case

because they were time-barred by the one-year statute of limitations, but a change in the law in March 2022 increased the statute of limitations for R.C. 2307.60 claims to six years; therefore, she could not have litigated her R.C. 2307.60 claim in the 112 case at that time. The trial court noted Wu did not dismiss her claims because of any statute of limitations issue, but because Wu planned to relocate to another state for a job after graduation. April 17, 2025 Judgment Entry at 19.

{¶ 59} "Generally, a change in decisional law which might arguably reverse the outcome in a prior civil action does not bar the application of the doctrine of res judicata." *National Amusements v. City of Springdale,* 53 Ohio St.3d 60, 63 (1990). Although there are narrow exceptions, the facts of this case do not warrant an exemption from the doctrine of res judicata. *Id.* The stability of final judgments must be maintained and cannot depend on there being no change in the law. *Id.* The fact is that Wu made the same claim in the 1259 case that she did in the 112 case which she dismissed with prejudice. The third prong of the res judicata test is satisfied.

{¶ 60} The last consideration is whether the 1259 case arose out of the transaction or occurrence that was the subject matter of the 112 case. A case arises from the same transaction or occurrence if it involves "a nucleus of facts that was the subject matter" of the first case. *Grava,* 73 Ohio St.3d at 383. Wu clearly alleged the same acts of sexual abuse and battery in the same time frame in both actions; therefore, Wu's R.C. 2307.06 claim in the 1259 case arose out of the same facts and occurrence that was the subject matter of the 112 case. The fourth prong of the res judicata test is satisfied.

{¶ 61} Upon review, we find the trial court did not err in finding res judicata applied and consequently granting Park's motion and denying Wu's motion on Wu's claim in the 1259 case.

{¶ 62} Assignments of Error II and III are denied.

IV, V

{¶ 63} In her fourth assignment of error, Wu claims the trial court erred in denying her January 24, 2025 motion for summary judgment on Park's falsification claim.

{¶ 64} In her fifth assignment of error, Wu claims the trial court erred in denying her January 24, 2025 motion for summary judgment on Park's spoliation claim.

{¶ 65} We find both of these assignments of error to be moot.

{¶ 66} Both the remaining falsification claim and the spoliation claim were tried to a jury and the jury found in Park's favor on those claims. As stated by this court in *Pingue v. Preferred Real Estate Investments II, LLC,* 2015-Ohio-4751, ¶ 36 (5th Dist.):

> The Ohio Supreme Court has held any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made. *Continental Ins. Co. v. Whittington,* 71 Ohio St.3d 150, 1994-Ohio-362, 642 N.E.2d 615.

{¶ 67} Upon review, we find given that the jury found in favor of Park on these two claims, Assignments of Error IV and V are moot.

VI, VII

{¶ 68} In her sixth assignment of error, Wu claims the trial court erred in denying her September 5, 2025 motion for JNOV on Park's R.C. 2307.60 claim for violating the no contact order.

{¶ 69} In her seventh assignment of error, Wu claims the trial court erred in denying her September 5, 2025 motion for JNOV on Park's spoliation claim.

{¶ 70} We disagree with both assignments of error.

{¶ 71} Civ.R. 50(B) governs motions for JNOV. As explained by this court in *Windsor Medical Center, Inc. v. Time Warner Cable, Inc.,* 2021-Ohio-158, ¶ 23 (5th Dist.):

> When ruling on a motion for JNOV, a trial court applies the same test as in reviewing a motion for a directed verdict. In reviewing a motion for JNOV, courts do not consider the weight of the evidence or the witness credibility; rather, courts consider the much narrower legal question of whether sufficient evidence exists to support the verdict. In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. Appellate review of a ruling on a motion for JNOV is de novo. (Citations omitted.)

### R.C. 2307.60 CLAIM

{¶ 72} In her motion for JNOV, Wu argued Park failed to prove an essential element on his counterclaim for civil liability for criminal acts (violating the no contact order) because he failed to prove he was damaged by Wu's actions.

{¶ 73} At trial, Park stated he was not seeking damages for the violation. T. at 539. The jury returned a verdict in favor of Park on this counterclaim, but found Park proved $0 damages consistent with his testimony. *See* Jury Interrogatory No. 16. In the punitive damages phase of the trial, the jury found Park proved malice related to this counterclaim

and allocated $25,000 of the total punitive damages award to the counterclaim. *See* Jury Interrogatory No. 1A. The trial court removed this $25,000 amount because Park failed to prove damages on this counterclaim. October 2, 2025 Judgment Entry at 5-6. The jury awarded Park compensatory damages of $35,000 on his counterclaims in a general verdict, $10,000 for his spoilation claim and $25,000 for his falsification claim. The trial court found no inconsistency in the verdicts and we agree. The trial court cured any defect with the $0 damages issue.

SPOLIATION CLAIM

{¶ 74} In her motion for JNOV, Wu argued Park failed to present any evidence that she willfully destroyed evidence for the purpose of disrupting Park's ability to prove his claim or defense.

{¶ 75} Wu alleged that Park texted her threatening messages. On July 3, 2024, Park requested Wu's cellphone and other electronic devices in order to have them forensically examined. T. at 434-435. Wu refused. T. at 439. At trial, Wu testified she had sold her cellphone to an unknown person before the discovery request. T. at 440. Park presented an eBay listing showing the cellphone was still for sale in September 2024. T. at 446-450; Defendant's Exhibit WW. Wu explained she was "not very good at using Ebay" and did not know how to "deactivate" her listing and mark it as sold. T. at 447-448. She could not explain why her eBay listing showed three revisions made by the seller (herself) on September 18, 2024, because she could not "interpret what Ebay shows." T. at 448-450. Credibility of the witnesses is determined by the jury; the jury chose to believe Park. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418 (1997) (the trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness,

something that does not translate well on the written page").  Sufficient evidence was presented for the trial court to determine Wu committed the act of spoliation.

{¶ 76} Upon review, we find the trial court did not err in denying Wu's motions for JNOV.

{¶ 77} Assignments of Error VI and VII are denied.

VIII

{¶ 78} In her eighth assignment of error, Wu claims the trial court erred in denying her December 5, 2025 motion for new trial.  We disagree.

{¶ 79} A motion for new trial is governed by Civ.R. 59.  Subsection (A) lists nine reasons to argue for a new trial.  In her motion, Wu did not state which reason(s), but we infer from her arguments that she asserted (A)(1): "Irregularity in the proceedings of the court . . . or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial" and (A)(9): "Error of law occurring at the trial and brought to the attention of the trial court by the party making the application."  The former is reviewed under an abuse of discretion standard, the latter under a de novo standard.  There is also the "catch-all" provision, "a new trial may also be granted in the sound discretion of the court for good cause shown."

{¶ 80} In her motion for new trial, Wu argued: 1) Park's expert was permitted to testify to opinions beyond his expert report; 2) she was prohibited from cross-examining Park on his own testimony as to whether he was a violent person; 3) she was prohibited from cross-examining Park on his relationship with his alleged alibi to elicit evidence of bias; and 4) the trial court gave erroneous jury instructions.  In her appellate brief, Wu does not argue the last issue.

## EXPERT OPINION

{¶ 81} Park's cellphone expert, Caleb Reynolds, testified and explained how an individual could create fake iMessages that look like they were sent from a different user. T. at 874-875. Wu cross-examined Reynolds on his expert report wherein he used two iPhones for the test; the expert report was not presented as an exhibit for trial. T. at 877. Reynolds agreed he used two iPhones for the test in his report, but he explained two iPhones were not needed and he could demonstrate on the stand "that you can do it to yourself" with one iPhone. *Id.* Wu now argues Reynolds was erroneously permitted to testify that fake iMessages could be created using a single iPhone, an opinion that was not included in his report. During his testimony, Reynolds opined it was possible to fake iMessages, but he did not say it could only be accomplished by using two iPhones. As noted by the trial court, Reynolds did not testify about a "new theory" not included in his report. January 8, 2026 Judgment Entry at 7. The complained of testimony was "consistent with and within the scope" of the expert report. *Id.* Furthermore, Columbus Police Detective Zachary Rosen testified that iMessages could be fabricated using a single iPhone and he performed a demonstration for the jury. T. at 764-765. Wu objected arguing expert testimony, but the objection was overruled because the testimony did not require an expert. T. at 765. The jury had already heard from Rosen how a single iPhone could be used to fabricate messages prior to Reynolds's testimony.

## CROSS-EXAMINATION ON VIOLENT PERSON

{¶ 82} On direct examination, Park testified he was not a violent person. T. at 847. On cross-examination, Wu revisited that testimony and stated, "And you have admitted to using violence against me." T. at 855. The trial court sustained an objection to this statement. T. at 856. Wu argues she was prejudiced because she was prevented from

discrediting Park and demonstrating he was violent. But Wu did not ask Park a question, she made a statement; a statement that had no basis given the evidence presented at trial. The trial court had already instructed via the motion in limine ruling that Wu was prohibited from discussing any allegations of sexual assault and/or violence. August 5, 2025 Judgment Entry at 2.

## CROSS-EXAMINATION ON ALIBI

{¶ 83} Wu alleged that Park appeared at her dorm on a specific date in violation of the ex parte protection order. Park testified he was with another woman on the night in question (a coworker). T. at 516-517. Wu sought to question Park on what he was doing with the woman and what was their relationship, including whether they had a sexual relationship, but was prohibited by the trial court because the questions were not relevant and were prejudicial. T. at 517. Wu argues she was prejudiced because she was prevented from impeaching Park on his false alibi, from discrediting Park and/or challenging his credibility, and from demonstrating potential bias, prejudice, interest, or motive. Park provided an alibi and Wu was permitted to cross-exam him on the truthfulness of that alibi. The trial court drew the line when Wu attempted to explore the woman's bias and truthfulness. If Wu wanted to explore the woman's truthfulness and bias for confirming the alibi, Wu could have called her to testify.

{¶ 84} Upon review, we find the trial court did not err in denying Wu's motion for new trial.

{¶ 85} Assignment of Error VIII is denied.

## IX

{¶ 86} In her ninth assignment of error, Wu claims in the judgment entry denying her motion for new trial, the trial court stated that "[t]he court eventually found Wu in

direct contempt of court but declined to impose a punishment for that contempt" and therefore any finding in direct contempt, if one was ever made, must be vacated. We disagree.

{¶ 87} Wu argues the trial court failed to issue notice, provide her with counsel, afford her an opportunity to defend herself against the contempt, and issue a written decision on the matter. Appellant's Brief at 42. Wu further argues an oral pronouncement of contempt is a nullity and "there is no such thing as 'direct contempt without punishment.'" *Id.*

{¶ 88} In its January 8, 2026 judgment entry denying Wu's motion for new trial, the trial court noted:

> Wu deliberately and flagrantly violated the court's orders and instructions to the point that she was warned about contempt of court at several different points during the trial. (*E.g., Id.* at 297-98, 313, 329, 432-33, 701, 856.) The court eventually found Wu in direct contempt of court but declined to impose a punishment for that contempt. (*Id.* at 1027-29.)

{¶ 89} A review of the record establishes the trial court orally found Wu in direct contempt, but the trial court did not impose any punishment or file a written decision on the finding. T. at 1027-1029. There is no contempt decision or punishment to vacate; Wu is merely seeking to strike language from a judgment entry denying her motion for new trial. We do not find any prejudice to Wu.

{¶ 90} Assignment of Error IX is denied.

X

{¶ 91} In her tenth assignment of error, Wu claims the trial court erred in finding her postjudgment filings were frivolous without holding a hearing required by binding Ohio Supreme Court precedent.  We disagree.

{¶ 92} On January 15, 2026, Wu filed a renewed motion for JNOV on the spoliation claim and a renewed motion for new trial.  In a January 16, 2026 judgment entry, the trial court denied these motions and noted it had already ruled on the motions, yet Wu refiled the same motions as "renewed."  The trial court opined, "[a]t this point, Wu's filings are frivolous."  The trial court warned Wu that further filings making arguments that have already been rejected could subject Wu to sanctions under R.C. 2323.51 or Civ.R. 11.  The trial court did not impose any sanctions; it merely warned Wu of filing repetitive motions. A hearing was not warranted.

{¶ 93} Assignment of Error X is denied.

{¶ 94} For the reasons stated in our accompanying Opinion, the judgment of the Delaware County Court of Common Pleas is AFFIRMED.

{¶ 95} Costs to Appellant.

By: King, P.J.

Hoffman, J. and

Montgomery, J. concur.